Hear ye, hear ye, this Honorable Appellate Court for the 2nd District is now open. The Honorable Justice Susan F. Hutchinson presiding, along with Justice Donald C. Hudson and Justice George Bridges. The case is number 2180776, People of the State of Illinois, Plaintiff-Appellee v. Gustavo Torres-Medel. Defendant-Appellant, arguing for the Appellant, Peter Skro, arguing for the Appellee, Kristen Schwinn. All right, good morning, counsel. Mr. Skro, if you are ready, you may proceed. Okay, good morning, Your Honors. May it please the Court. Pete Skro for the Appellant, Gustavo Torres-Medel. The issue in this case is whether Mr. Medel established cause of prejudice such that he should have been granted leave to file his post-conviction petition. His claims are that counsel was ineffective for not discovering and the state failed to at least two other people, performed CPR on Junior, which could have been the source of some of his injuries and this would have aided his defense at trial, that he was only guilty of involuntary manslaughter as opposed to first-degree murder. Starting with cause, you know, Mr. Medel is not required at this stage to conclusively prove cause. The standard is whether he has alleged adequate facts for a prima facie case, prima facie showing of cause. I think Mr. Medel did that in this case. He said that he did not obtain these documents until he had a FOIA request granted by the West Chicago Police Department. He further said that his lack of English-speaking proficiency impeded his ability to conduct this investigation. So therefore, that's his cause, you know, that's why he didn't raise this earlier and I think that makes a prima facie showing. The state has offered two reasons why they say Mr. Medel has not established cause. The first is that this is not a new claim and they rely primarily on people v. Green for that. I think Green is distinguishable, you know, in that case the defendant twice had counsel and even an investigator to litigate this claim and then on the third claim, you know, it's quite a bit different than Mr. Medel who's never had counsel to help him litigate this claim. But I also think the main thing that Green should not apply is to the extent that Green holds that new facts can't support a similar claim, it contradicts with our Supreme Court's decision in people v. Ortiz, which held that collateral estoppel doesn't apply if you have new evidence, even if the claim is the same. I mean, in Ortiz it had been, I think it was his third post-conviction petition, still arguing that he was innocent and the state's witnesses weren't credible and he had two new affidavits. The other reason the state offers is that he has not identified an objective factor that prevented him from raising this before and obtaining these documents before. I think Mr. Medel did. The state relies on people v. Jealous, I'm not sure if I'm pronouncing that correctly, but I think Jealous actually shows that Mr. Medel should have been granted leave to file because that's what happened in Jealous. It was like 20 years after the fact he learned that his attorney had failed to disclose a plea offer, he learned it from a freedom of information request, and the circuit court granted leave to file and went to an evidentiary hearing and ultimately was dismissed and not appealed. This court did hold that he did not establish cause, but that's at a different standard. So I think Jealous is how this case should proceed. He should be granted leave to file. And then the state's free to try to argue later, well, we need to know what this FOIA request. But I think for a prima facie case, Mr. Medel has established cause. I would like to say one last thing. For a pro se litigant who doesn't speak English, most of our inmates in Illinois are lacking education, lack of knowledge of the law, lack of knowledge of civil procedure, it's obviously very difficult for them to conduct an investigation from their cell and try to do this. So I think at this stage he's established cause. Turning to prejudice, the same standard applies. He's not required to prove prejudice at this stage, just he has to allege adequate facts to show a prima facie showing. And in this case, one of the key issues at trial was whether Mr. Medel had the intent for first degree murder or whether it was involuntary manslaughter. These documents that he obtained would have aided that. At trial the state argued that the severity, a number of the injuries show that he was guilty of first degree murder and they refer to the crushing on his chest and the broken ribs. Defense counsel tried to argue that there could have been another source of these injuries, improperly performed CPR, but he didn't have much evidence to support that. And, yeah, I know Dr. Harkey did testify at trial that he did not think these injuries were caused by CPR because of the hemorrhaging which would not have been caused postmortem. But Dr. Harkey did admit at trial that improperly performed CPR could have caused postmortem hemorrhaging. And I think at this stage that establishes prejudice for the standard that needs to be for the leave to file stage. So for those reasons, I believe Mr. Medel should have been granted leave to file and I would be happy to take all of your questions on these issues. Thank you, sir. Justice Hudson, do you have any questions? Yes. Thank you. Mr. Skrull, I wanted to focus in on the prejudice part of the test. Sure. Even if we were to accede to your argument about the rib fractures occurring when somebody improperly administered CPR, that would certainly not explain the serious brain injury that was also a cause of the baby's death, would it? No, the CPR, I don't believe there's any facts that would show that the CPR could have caused the brain injury. And under the existing case law, specifically People v. Crane, as long as the defendant's acts contribute to the death of the victim, isn't it true the defendant may probably be found guilty of murder? Well, I think of course he could be probably found guilty of murder, but I think the question here is one of the defenses at trial was when you cause injuries, you could also be guilty of involuntary manslaughter. And I think the number of these injuries is part of what the state argued showed that he was guilty of the most serious crime we have in Illinois, first degree murder. And so I think anything that would have tended to show that there were another source of at least some of these injuries that could have negated the mental state required for first degree murder. And I'm not saying that that's what would ultimately happen with the testimony of these two potential witnesses. But I think at this stage he has made a prima facie showing that prejudice could exist from the failure to cause these. That was one of the defense counsel's main, seems like a thrust of his cross examination of Dr. Harkey and part of his argument was these brim injuries could have been caught at another source and therefore he should only be found guilty of involuntary manslaughter. So how does this differ from the original petition? In the original petition didn't he allege improperly performed CPR? Yes, Your Honor. And I think that's what I get to, this is kind of like Ortiz. He now has documents that really seem to show, you know, Officer Cadena said he got there and there was a person performing CPR, another one of the police reports said I believe Nancy the cashier was performing and then Dr. Cadena took over and then the EMTs performed even more CPR on a three-month-old child. So there's a lot of CPR being performed according to these documents. So he has new evidence to support this claim. So I think pursuant to people of the Ortiz he's not prohibited from raising this because he And you're saying now there's more evidence to support the argument about the improperly performed CPR. But looking at it from the proper perspective that we have to, how is this really material? The fact that he now has a stronger case for improperly performed CPR, again, in light of the serious brain injury that cannot be explained by the CPR, if that evidence was presented, how would that be likely to change the result of the trial? Well, I think that if as a trial defense counsels maybe the more persuasively argue, look, some of these injuries, some of the most serious injuries, these chest and rib injuries, which the state referred to as crushing blows, if they had been caused by someone improperly performing CPR, yes, it doesn't explain all the injuries. But when we're talking something like this, they had to prove the mental state for first-degree murder, and involuntary manslaughter doesn't mean you don't prove causation. It means that you didn't have the mental state to intentionally or knowingly kill. And so I think that was pretty much what defense counsel's defense at trial was, was trying to say that not all of these injuries were caused by or could have been caused by other people, and therefore he didn't have the intent for first-degree murder. So I think, you know, I understand. I'm not saying that ultimately these witnesses will carry the day. I don't think we know at this point. But at this stage of just making a prime efficient showing of prejudice, if he could have shown another source of these injuries, he would have been able to more convincingly argue, I didn't have the intent for first-degree murder. Thank you, Mr. Skrill. That's all I have at this time. Thank you. Thank you, Justice Hudson. Justice Bridges, do you have any questions? I do. Thank you. Thank you. Counsel, you raised in your brief and also in the reply brief that the new information could have led to a verdict of involuntary manslaughter, and you mentioned that here several times this morning. Under a cause and prejudice claim, can you point out what evidence in this case would establish defendants' acts were performed recklessly? Well, I think when you look at involuntary manslaughter, you know, the case law is that you can intentionally perform an act, but recklessly disregard the consequences of that act. So if he had dropped the car the carrier was in or, you know, slapped his child or whatever, there still could be a finding of involuntary manslaughter based on the fact that, you know, it's not acting recklessly. Actually, for involuntary manslaughter, the standard is, and I apologize, this isn't in the briefs, but I've had this issue many times, but the standard is you can intentionally cause an act, but it's reckless if you consciously disregard the consequences of that act. Counsel, I'm still having trouble with the evidence before us, understanding how a defendant would have been entitled to an involuntary manslaughter verdict. When you have testimony from Investigator Easton that's in the record at R-58 through R-61, it seems to establish only intentional acts, squeezing of the victim's torso to stop them from crying, shaking, throwing the child into the hard car seat, slapping the victim's face at least four times, biting the victim. I don't see how this ever would have risen to a level of getting a lesser, an involuntary verdict for him. Can you point out what evidence you, I heard your argument about that, but what evidence is there in the record that would support that? Well, I mean, I think the state has the burden of proving that he intentionally intended to kill, and at trials, actually, defense counsel did argue for involuntary manslaughter, and the trial court did not say that he couldn't argue involuntary manslaughter. So I think the trial court felt that there was enough evidence for at least, you know, this was a bench trial, so it wasn't an instructional issue, but allowing him to argue was comparable to what the instructional issue would be, and so because the court allowed defense counsel and defense counsel got permission from Mr. Medill to argue for involuntary manslaughter, I think even the trial court thought that there was at least some slight evidence to show involuntary manslaughter. And like I said, I understand that there was injuries here, and the argument is that, yes, intentional acts can support first-degree murder, but intentional acts can also support involuntary manslaughter if they involve a reckless disregard for the consequences of those acts. Okay. Let me ask you this. The defendant in this case, he told, again, Investigator Easton, the child had died before any CPR was performed, and the pathologist testified that none of the injuries on the victim were sustained post-mortem. Isn't this fatal to defendant's cause and prejudice claim? Well, like I said, Dr. Harkey said he did not believe that these were caused post-mortem, but then after cross-examination, he did admit that the rib injuries could have been caused post-mortem if there had been, I think he said, very improperly performed CPR, because he said that the hemorrhaging showed that these injuries were not post-mortem, but defense counsel questioned him and said, if someone had been performing chest compressions improperly and in different spots, that could have also pushed blood, which would have mirrored the hemorrhaging that you would see with pre-mortem injuries. So I don't think the evidence at trial was conclusive that it wasn't post-mortem. I mean, that was his opinion, but he did admit very improperly performed CPR could have caused these injuries post-mortem. So it wasn't as conclusive as his initial, what he stated on direct examination. But in determining whether or not the prima facie case has been made, the court looks at all of the evidence, and in this case here, the defendant's statement was that the child was already deceased. You're arguing about the pathologist, but what do you have to say about the defendant's statement that he believed the child was already deceased? Well, I still, I mean, the defendant that, you know, whether he believed he was already deceased, I don't know if it's conclusive as to whether his state of mind was at the time that these injuries were inflicted or that the number and severity of these injuries proved that he had the intent for first-degree murder. Okay. So that I'm clear, and just to follow up on Justice Hudson's question, your position is that had the additional evidence that CPR could have been, that could have caused the rib injuries, that it would have changed the outcome. That's correct? No, it's not that it would have changed. That's not the standard at this stage. It's just whether he's made adequate facts for a primary patient showing that it could have changed. You know, Strickland is not, we're not even really dealing with a full Strickland analysis, but even under Strickland, you don't have to prove conclusively that it would have changed the outcome. It's whether there's a reasonable probability it could have changed the outcome. And I'm just arguing at this stage, this claim doesn't clearly fail as a matter of law, and I think that he has supplied sufficient documentation to justify further proceedings. Thank you, counsel. Thank you, Justice Hutchinson. I have no further questions. Thank you. Well, my learned colleagues have essentially stolen most of my questions, but I have a couple that I would like to ask. Does this record in any way reflect how or why this FOIA request was made by the appellant? It's just his affidavit and the affidavit from his cellmate saying that he, you know, requested documents from the West Chicago Police Department. I mean, he had, so it's, I don't know exactly there, but once again, I think the standard is whether he's alleged adequate facts to show cause, and I mean he clearly obtained these documents, so I don't think, I think it's a fairly logical conclusion that he did have a FOIA request. You know, and he, so I, you know, but I don't believe that the record shows exactly the steps he took with regards to how he went about doing this FOIA other than what is in his affidavit and his cellmate's affidavit. Okay. Counsel for the defendant did repeatedly address the state's comments about the serious chest injuries and some of the other front injuries could have been from improper CPR, and the trial court heard that several times both in cross-examination and as well as an argument. Isn't that correct? Yes, Your Honor. So what exactly would these records or this information from the police reports actually accomplish here to extend his cause or to extend his position? Well, I think at trial there was very minimal evidence at any one. So, you know, Van Winkle, I think someone said that they thought Van Winkle had the, I believe that's the retired firefighter, had performed CPR, but Van Winkle testified he didn't perform CPR, and there was no really other evidence other than maybe someone did or maybe they were just, you know, checking the pulse. So these reports would show, I mean, they show, Jorgensen's report and the police report is like Officer Cadena got there, you have a cashier who's performing CPR, and then he takes over CPR, and this is all before the EMTs get there. So that wasn't really ever presented to the trial court that we, you know, and taking these allegations as true at this stage, that would have been two people, including a lay witness, and with Dr. Harkey acknowledging that perhaps very improperly performed CPR could have caused, could have caused postmortem. So I think this is something new that was not before the trial court. All right. But what we have here is rather conclusive evidence that the child was dead when first his mother arrived and then certainly when other people arrived because there seemed to be some lapse in time between the call and when mother arrived home. And then we have possible or an opinion that improper CPR postmortem could cause some hemorrhaging. So isn't it the job of the trial court in this case, the trier of fact, to weigh this evidence and make a determination from the evidence that's presented that is significantly conclusive? Well, yes, Your Honor. I think that the, in this case, the state, you know, if the junior was deceased at the time when other people started to arrive, the state's argument was that all of these chest injuries had already been inflicted and these crushing blows showed that he had this intent to kill this, you know, the severity of these, you know. So the fact that the child was perhaps dead by the time other people arrived doesn't necessarily solve this question. And I think what's different here is that there was no real evidence presented at trial that there was improper, you know, a layperson performing CPR, whether it was postmortem or not. But I think that's what defense counsel is saying. The state's saying, no, these injuries are all inflicted by the defendant before anyone got there. And then this new evidence shows, no, maybe some of these injuries were, in fact, inflicted after. And, therefore, that would support that, yes, there was injuries here that show the causation for death, but was it enough to show the first-degree murder? And that's, you know, like I said, that was basically what defense counsel's defense at trial was. And this shows that counsel was perhaps ineffective because there was evidence to help his defense at trial that he did not locate. Severity of the injuries generally is something that we look at very carefully, as does the trial court during, if it's a trial fact, during the trial. The brain injury is probably one of the most severe that we see. Isn't that correct? Yes, Your Honor. I mean, there was no skull fracture, I believe, but it was definitely a severe injury. But I think, you know, with children, like, you know, there could be that caused by accidental falling, dropping of the, you know, we don't know exactly. I mean, but yes, there was a severe brain injury. Well, the doctor did say there was also an injury to the back of the head that might have caused the brain injury because three-month-old babies have sort of soft spots on their head. But I just don't, if we're looking at all of the injuries taken together, including those on his bottom and those on his face, how, as Justice Hudson, or I'm sorry, as Justice Bridges asked, how does improper CPR after the fact, and we'll accept that as true, indicate or establish reckless conduct on behalf of the defendant? Well, you know, like I said previously, it's a question of mental state here. And that was what the defense counsel tried to argue at trial. And so I think that the more injuries that you prove the defendant inflicted, the more you're going to be able to argue, this was, he intended to kill the baby. It wasn't, he lost his temper and threw the car seat down or, or through the, you know, the carrier down or whatever. It's the, you know, so I think that as defense counsel tried to argue at trial, that if these injuries were caused by another source, that doesn't necessarily take away causation, but it could show that the mental state was not for first degree murder. All right. Thank you, counsel. You will have an opportunity to reply after Ms. Schwinn finishes, if you so choose. Thank you. All right. Ms. Schwinn, you may proceed. May it please the court, counsel. Good. Good morning. You know, your honor, your honor, I would like to kind of, I know a lot of the questions discussed the prejudice prong. I would like to briefly address the cause prong. Opposing counsel relies significantly on people, the Ortiz to state that the fact that the defendant is now raising the same claim that he raised that trial and he raised in his initial post conviction, that he's not precluded that the cause, he could still raise it again in his successive petition because Ortiz says that when you bring new information, it is essentially you're not precluded by collateral estoppel. Ortiz doesn't apply here. Ortiz focuses on actual innocence claims and an actual innocence claim. There is no cause and prejudice standard that must be met in order to bring an actual innocence claim. Defendants can bring multiple successive post conviction claims, raising actual innocence claims at each time. In Ortiz, the discussion about collateral estoppel was whether or not you can have the application of preclusion doctrine applied to post conviction litigation. Here, the defendant has not brought an actual innocence claim. Therefore he has to rely on the cause and prejudice standard. And then the cause and prejudice standard under cause, the defendant must show that there was some factor that impeded his ability to bring this claim earlier. He did bring the claim earlier. And now he wants to bring the same claim, but with different information. This is not the same as Ortiz. And as People Be Green, which we cite in our brief says that, you know, just because you bring more information, that does not make it a new claim. And so therefore, the defendant has not met cause. I would also just point out in People Be Green in paragraph 36, where they discuss the actual innocence claims that the defendant brought in Green, they cite to Ortiz, but notably they do not cite to Ortiz when the court discusses the defendant's Brady claim, which must be met with the cause and prejudice standard. And so for the reasons stated in our brief, we believe that the defendant has not shown cause to support the granting of his motion for leave to file successive post-conviction petition. Just turning briefly to the prejudice prong, you know, your honors, I believe Justice Bridges and Justice Hudson and Justice Hutchinson, we all discussed, which is, you know, the severity of the injuries and the severity of the injuries apart from the injuries, even if taking as true the injuries on the rib fractures, there is evidence that the defendant caused these injuries intended to kick the defendant as he admitted to his friend, Alfredo Escobar, that he intended to hit the three-month-old child because the child was crying. And the, you know, as, as your honors pointed out, you know, the results of the trial would not have been any different had this information been presented because the information, well, one, Dr. Harkey testified that the brain injuries alone was a cause of death and none of the police reports go to any challenging of Dr. Harkey's opinion and examination of the brain injuries. And the additional injuries that the police report don't touch are extensive. I'll just note that Dr. Harkey noted that there was multiple bruises on the body. The cheeks were black. There, you know, there was abrasions on the right cheek and the left cheek. There was an abrasion to the lateral angle of the mouth. There was an abrasion to the lateral part of the right eye. There are multiple bruises on the defendant's chest. There's bruises on the abdomen. There's three bruises on the front left hip bone. There's a bruise on the front right hip bone. There's a bruise on the back. There are bruises in the U shape on both buttocks. And that's not even to discuss the internal injuries in which Dr. Harkey observed multiple hemorrhaging and edema, which Dr. Harkey opined was the evidence of blunt force trauma, both the edema in the back of the head. Then Dr. Harkey found subdural hematoma and subarachnoid, I apologize if I'm pronouncing that incorrectly, hematoma. All of these are markers for traumatic injury. None of the police reports had counsel, had access to them, would have changed Dr. Harkey's opinions on that testimony. As I briefly touched on earlier, and I believe Justice Hutchinson, you touched on earlier too, counsel at trial did discuss and extensively cross-examined Dr. Harkey on the fact that can improper CPR cause fractures. And Dr. Harkey said he has never seen improper CPR, even when he has done autopsies on children who have died of SIDS and parents have performed CPR. He has never seen rib fractures associated with chest compressions. And he emphasized that CPR, yes, while could cause rib fractures, it must be very improperly done for that to even be possible. But more importantly, Dr. Harkey opined based on the totality of the evidence that he observed or the findings he observed, he did not believe that the chest fractures were caused by improper CPR. And the opposing counsel does mention the limited information, you know, information discussing improper CPR. I will note that the baby's mother did testify that she believed that the retired EMT, Rex Van Winkle, and Nancy from work gave CPR. And I believe that another individual from the supermarket where both the defendant and the baby's mother worked believed that someone else beyond EMT professionals that came gave CPR. So that evidence was already in the record. Both counsel and the court considered the evidence as if the evidence was there showing that there was CPR done and that it was, it was improper. And the court essentially said that that didn't, you know, even if she were to consider that, she still found that the defendant committed first degree murder. And, you know, in terms of the mental state, what the defendant is arguing is he's asking for one of the many injuries, this one off would have found that the mental state was reckless and not intentional. And due to the very extensive list of injuries, plus the defendant's statement that he did hit the child because the child was crying, there's just no way that there's any merit to either the ineffective assistance of counsel claim or the Brady claim. And because there's no merit, the defendant can't show prejudice. And if there's no other, excuse me, I apologize. I keep thinking there's no other questions, but this is a one, just me talking for the reasons stated in our brief, we would ask that this court affirm that trial court's ruling. Okay. Now come the questions. I'm so sorry about that. No, no, no. It's understandable that we have prep, we have process in our head and sometimes it's hard to disengage it. All right. It's hard for me not to try to interrupt you and ask that question, but this is, this is the process. I just, that's an I will try not to interrupt you and your questions if you wish to proceed. Good morning. Good morning. Um, Ms. Schwinn, isn't it true that, um, particular case when it comes to establishing cause and prejudice, the defendant need only establish a prima facie claim. Is that correct? I believe so. That's correct. All right. So can you sum up and tell us specifically why the prima facie case has not been established here? Under both, under both prongs or, um, just the cause prong. Why isn't there a prima facie case? Well, there's a prima facie case because there's no merit to either, to either claim, um, in that he cannot meet prima facie because there's no merit to the underlying claim. Um, the extensive injury and the extensive injuries that show that the defendant intended to hit the child show that even if, even if there was more substantial evidence put in beyond that, what's counsel already put into the evidence that a individual performed CPR and, and counsel's not, or excuse me, and the evidence that the defendant seeks to use doesn't even say that the CPR was performed improperly, just that this individual performed CPR. That is insufficient to show that that one off injury would change the mental state from intentional to reckless. And, um, just to the cause prong, there's no, well, one, you can't meet, you need to meet both. So there's no prima facie case for prejudice. So therefore the court should, um, affirm the ruling. But even if this court were to find a prima facie case for prejudice, the defendant hasn't shown cause because prima facially this was the, this is not a new area of litigation. The defendant throughout the course of his proceedings has challenged the, um, who caused the rib fractures. This is just a new spin with a different set of information to say the, the same claim that he made during his trial and during, um, in his first post-conviction petition. So therefore, um, there's no prima facie case shown. All right. How would you respond to the argument? Uh, the defendant's claim that he should be allowed to file a post, uh, successive post conviction petition because the state committed a Brady violation and did not turn over the investigative reports. Your response to that? The response is that, um, even under Brady, the defendant, even in a Brady claim in a successive post-conviction petition, the defendant still must show cause and prejudice. And, you know, as set forth in the brief and as set forth, you know, in the arguments discussed today, you know, materiality has not, you know, there's no merit, um, to the Brady claim because the defendant can't show, um, the fact that the head injuries alone, Dr. Hartley opine was a cause of death and, um, none of the police reports discuss that, nor do any of the police reports discuss or change any sort of, um, reckless finding for the head injury. Thank you, Ms. Schwinn. That's all I have. Justice Bridges. Do you have any questions? I do. Uh, Justice Hudson covered, uh, several of mine, but one, the one I have, you started out with, uh, Ms. Schwinn was you distinguish Ortiz from this case, uh, arguing that Ortiz dealt primarily, uh, solely with new evidence. Since defendant only had to make a prima facie showing of cause, wouldn't establishing an alternate theory for the cause of J.R.'s death be enough under Ortiz to present a new claim? Um, no. Um, and I, if I said that, I, I apologize. I believe the main distinguishing factor between this case and people who are T's is that people who are T's discuss actual innocence claims, which is a different standard that needs to be met compared to, um, claims brought here, which a cause and prejudice standard needs to be met. So, um, I believe that that's a significant distinction because there must be different things shown such that to grant leave for a successful petition. Um, here, because the defendant brought an ineffective assistance of counsel claim and, um, a Brady claim, um, those claims are subject to cause and prejudice, which does not have as, um, which has a more stringent standard to meet for cause than does, um, actual innocence, which actual innocence does not require cause. And then I apologize. I said new evidence, but you're right. You said actual innocence. So, uh, thank you for that clarification. Um, and also the record before us doesn't definitively demonstrate if the records of those who perform the CPR was tendered to the defense, there was some question about whether or not they were, uh, but assuming they were not in fact tendered, why wouldn't this be considered a Brady violation sufficient enough to establish prejudice prejudice? Um, well, there, there are these two things we agree. I, um, the people do not concede that these reports were not tendered. Um, I believe I say in my brief, there was a number of disclosures stating that police reports were tendered and, uh, the coroner's report was tendered on March 10th, I believe 2010. So that was the information in that, which said that someone gave CPR that was tendered to counsel. Um, and I believe that the defendant does not, um, challenge that on appeal that the coroner's report was tendered. Um, because even in a Brady, even if taking the defendant's, um, statements as true and that he did not receive the information, one under people be green, he still has to meet cause, which is he has to show how, why he did not request this information earlier when he originally brought his claim. And green says that just because you request a FOIA request later, doesn't mean, and it shows some information. It does not mean that, um, cause is met. And secondly, going to the prejudice prong again, um, a defendant can't show prejudice if there is no merit to the claim. And as I, um, as we discussed in our brief, um, the defendant can't show materiality. And I believe as you discussed, um, justice Bridges, the cancel materiality will want one, because this information would not be such that it would change the defendant's mental state to show recklessness. This is just what one injury of multiple injuries, um, that this child sustained, um, and multiple entries that this child sustained where the defendant did admit that he hit the child because the child was crying. Um, and secondly, as in terms of materiality, it would not have changed the result of the underlying proceeding because as, um, we discussed that there are a number of head injuries alone caught. Was it, um, one cause of death and the police report do not discuss any showing a potential showing of a reckless, um, dental state towards the injuries to the head. Thank you. Um, and thank you justice Hutchinson. I have no further questions. Thank you. Um, didn't the defendant's wife testify that she believed that Nancy and Ben Winkle had performed CPR? Yeah. And she didn't know about the other officer, um, because part of his was outside. Is that correct? Officer Sedana, I guess is the name. Yes. I believe that the, the testimony doesn't, the testimony seems whether officer Sedana did it in the, in the house or not in the house. But yes, I, yes, you're correct. Okay. So when, uh, Dr. Harkey testified and was cross-examined by defense attorney about CPR, and improper CPR, and hemorrhaging, and when the trial court, trier effect already had information that Mrs. or defendant's wife believed that somebody had performed CPR. Is that correct? Yeah. So now we have in the record that somebody performed CPR, but we have a rather definitive answer by Dr. Harkey that he hasn't seen improper CPR actually cause these issues even by a lay person or is that generally what he said? Yes. I believe that trial, um, both, uh, defense counsel's questioning and Dr. Harkey testimony, um, discussed it as if there, you know, as if there was definitive information that there was CPR performed by a non, um, medical professional. And Dr. Harkey, um, did not believe that the, uh, the injuries shown would be the result of improper CPR. So in fact, when we look at these reports that have been obtained by FOIA, what really is new or different in those reports other than identifying officers today? I, I, I would agree at most the, um, at most the report gives a different spin on the same information that was presented at trial. All right. Um, as to cause a defendant said that he had not told prior cellmates, uh, who may have been able to help him with this, the Spanish, uh, about the, uh, the nature of the crime because he was fearful for his life and they were gang members. Is, I'm having a difficulty believing that his prior cellmates didn't know why he was there. Is there anything in the records that would indicate why they wouldn't have known? No, there, there's nothing, there's nothing in the, in the record that indicates indicates that. All right. But his, the current cellmate who did try to help him, um, we, we just know that he, he tests or he, in his affidavit said that they didn't have any, uh, officials who could help him with Spanish speaking issues and he did his best. Is that correct? I, yes, I believe so. And, and you're right. We, we did cite to, um, people be jealous, which did discuss, um, access to help while in the, um, correctional institution. And in that, in that case, um, the trial court found that the lack of access, um, met cause, but on appeal, the, um, court said, well, you know, trial court, that was error for you to even have granted the lead to file successive based on that, on that factor. So I would, I would say that this would be an analogous situation. All right. All right. Thank you, Ms. Schwind. And, um, we will now go back to Mr. Skro. If you have any reply that you wish to offer, this would be the time. Uh, sure. A couple of things. Um, you know, the, the evidence that was presented at trial that someone else called CPR, the state referred to it as minimal. I mean, she said Van Winkle, well Van Winkle testified, he did not perform CPR. And so I don't think it was, and the state was able to argue, well, there's really no evidence that Nancy performs CPR other than, you know, maybe she was just trying to revive. Um, so I, you know, I think it would have been, these reports show up much more conclusive, you know, officer Kadenia shows up Nancy's performing CPR. He takes over this. Officer Sedana performing CPR was never brought out of trial. And as the state said, any evidence that Nancy did was minimal. So I think this would point to evidence is more than minimum. Um, I would like to say, I don't think necessarily that jealous, the fact that, it's not necessarily that it was improper to grant leave to file. It's just that there's a low standard at the leave to file stage. And then the state does like, I think our Supreme court case in Bailey says, then the state's free to argue further at the further stages of proceedings that cause was not proven, but at the leave to file stage, it's just prima facie. So I think in jealous, it was a prima facie case made. And then this court did not buy his reason after the evidentiary hearing. And he was unable to provide an affidavit. He said, he didn't, he only learned of this through a cellmate who told him he had the same attorney who also failed to convey a plea offer. And he didn't provide an affidavit. He couldn't even name the cellmate. He had no details. And so this court had said, you know, we don't think he established cause. And then, and then they went on to find there was no prejudice, but but I think jealous, it's consistent with this at this stage, it's just, should he have been granted, did he make a prima facie case? And then the state under Bailey and others has been free to say, well, maybe a prima facie case was established, but is not made the showing he, you know, now this has been a chance to develop. And that's partially because, you know, Mr. Torres-Midell is a pro se litigant. And these are, you know, I think that's part of the reason there's only has to be a prima facie case. And then once he has an attorney, he can develop that claim. And I, you know, that was just like briefly to say the state seems to be arguing that Ortiz only is an actualist, which it is. But I think the general principle that they say, when a defendant presents newly discovered in additional evidence in support of the claim, collateral estoppel is not applicable because it's not the same claim. I mean, I think the state's position would be very counter to the purpose of the post-conviction hearing act. I mean, yes, this isn't an actual innocence claim, but the evidence could eventually support innocence. I mean, if you have an ineffective assistance claim that you raised, but then you're able to find conclusive evidence that shows it and that say witnesses should have been called or this or that to say, well, defendants forever precluded from raising that, I think would be unfair. And I don't think that the cause and prejudice standard says that I think. So, you know, I think that he has new evidence here that was not presented to the trial court. And so I do think it is a new claim. So other than that, that's all I have to say in rebuttal. Thank you, sir. Justice Hudson. Yes, I do have a question, Mr. Skrull. You alluded to and relied on people versus Ortiz and your argument supporting your twin has responded that Ortiz is distinguishable because that was an actual innocence case in which no cause or prejudice must be established. How do you respond to that argument? Well, I guess I think the principle of Ortiz is that you're not stopped from raising the claim and you're a hundred percent correct. Mr. Medill-Torres has to establish cause. And but I think what Ortiz is saying is that new evidence to support a claim has already been made. It's a new claim. So, yes, Mr. Medill-Torres has to establish cause. My position is that he did establish cause because he said he only learned of this through a FOIA request and his lack of proficiency in English and the lack of translation assistance at the jail impeded his ability. And so I think I don't disagree at all that, yes, you have to show cause. I just think that the principle of Ortiz is that when we're looking at, you know, I mean, the state's position is no matter what he shows, he can't ever raise anything to do with this or any defendant could find the most conclusive evidence in the future. But if he's already raised a claim based on that without the evidence, he's forever precluded. And I don't think the Post-Conviction Hearing Act contemplates such a finding that cause and prejudice acts that way. Thank you, Mr. Scrull. That's all I have. Justice Bridges, do you have any questions? I do not. Thank you, Justice. Thank you. I do have one or two possibly. How, in this whole bit of conversation that we've been having here, how do we overlook the testimony or the, you know, the admission to officers that defendants said he intended to hit the child to stop it from crying? And he also, I think he told his friend that he also told his friend he had done something terrible. And when he called his wife, he said something tragic has happened. How do these police reports and Dr. Jorgensen's report in any way counter those statements? Well, I think, you know, saying something tragic or he did something wrong, even if it was a complete accident, I'm sure anyone would feel that it was tragic and they had done something wrong, any parent, you know. So I don't think that necessarily conclusively proves first degree murder. And like I said previously, I don't believe that, you know, I mean, the case law is clear. You could intentionally inflict an injury, but that doesn't necessarily mean that because death is caused that that's first degree murder. It could be a conscious disregard of the consequences of that. So, you know, so, you know, that's I think here with the state relied on, in part on, you know, saying, look, he had these crushing blows to the chest and the rib fractures and all that shows like the totality here shows this was not a, you know, a case where you acted recklessly. You know, he hit his kid, but not with the intent to kill or that. They're saying, look at all of this. So I think that anything that would have helped defend the defense at trial, which was frankly what defense counsel was trying to argue through a fair amount of this trial, was that he didn't inflict all of these injuries and he didn't have the intent for first degree murder. Throughout all of this, I was looking for cases and did not find any. But are you aware of any case that literally quantifies the number of injuries to establish the intent to kill or anything of that nature when we're involved with a child? No, Your Honor, I don't, you know, and I would imagine that these are all going to be fact, you know, come down to the factual, you know, I don't know that there would be a hard and fast rule that X number of injuries equals first degree murder and X number equals, you know, so I'm not aware of a case that says a hard and fast rule, no. But we do, in fact, have lots of cases about children of this age and their how they could be seriously injured by what might be not a serious problem for an older child or an adult, correct? Correct. They're just different. They're different little humans and they're much more fragile. Yes, Your Honor. Okay. I don't have any other questions at this time, either Justice Hudson or Justice Bridges. Anything that I might have brought up or anything that's come to mind since you had your questioning? I do not. I do not. Thank you, Justice. Thank you. Justice Hutchinson, have you muted yourself? Hold on, everyone. I'm going to end the call. Mr. Scroggs ending this call, if that's okay. Doing the same. Thank you very much. We'll make a decision in due course. Thank you. Thank you, gentlemen.